Filed 7/27/23  In re J.S. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re J.S., a Person Coming Under the Juvenile Court Law. | B316323<br>(Los Angeles County<br>Super. Ct. No. 20CCJP04850) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>       Plaintiff and Respondent,<br><br>       v.<br><br>D.L.,<br><br>       Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Pete R. Navarro, Judge Pro Tempore. Affirmed.

Karen B. Stalter, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel and Kim Nemoy, Assistant County Counsel, for Plaintiff and Respondent.

_____

Mother appeals the denial of her Welfare and Institutions Code section 388 petition.[1]  Her sole contention on appeal is that the juvenile court erred in not ordering the Los Angeles County Department of Children and Family Services (DCFS) to send notice to the Apache Tribes because the court had reason to know mother's child, J.S., is an Indian child.  Mother's premise is incorrect; the juvenile court did not have reason to know J.S. is an Indian child.  We thus affirm.

## BACKGROUND

We summarize only those facts relevant to this appeal. Mother has six children.  The youngest, J.S., was born in September 2020.  Prior to the current dependency proceedings, all of mother's children, except J.S., were removed from her custody because of mother's longstanding drug abuse.  The case before us involves only J.S.

DCFS filed a section 300 petition on September 15, 2020 when J.S. was only weeks old and born with a positive toxicology for Benzodiazepines.  The juvenile court sustained allegations that mother has a history of drug abuse and currently abuses benzodiazepine, marijuana, opiates, and prescription medication,

_____

[1]  Undesignated statutory citations are to the Welfare and Institutions Code.

2

and that this substance abuse renders her incapable of caring for J.S. The juvenile court also sustained similar allegations of past and current substance abuse against father, which substance abuse renders him unable to provide regular care for J.S. and places J.S. at risk of serious danger.

In September 2020, DCFS placed J.S. with maternal uncle, G.L. In October 2020, G.L. indicated he wanted to adopt J.S. and later, he became J.S.'s prospective adoptive parent. G.L. previously had adopted J.S.'s half sister.

When the case started, mother told a social worker her family might be part of the Apache Tribe. Mother's attorney signed a parental notification of Indian status on behalf of mother in which mother indicated one or more of her parents, grandparents, or other lineal ancestors was a member of the Apache Tribe. Mother identified the ancestor as Lorenzo L.; he died in 2018.

At a hearing on September 18, 2020, mother told the juvenile court that "my real father, was Native American." Mother continued, "[H]e's Apache Indian so he's from up north." The court asked mother if she had any new information concerning Indian heritage since the juvenile court previously made findings that the Indian Child Welfare Act of 1978 (ICWA)[2] did not apply to a half sibling. Mother answered, "No."

On September 18, 2020, the juvenile court found ICWA does not apply as to mother.[3] DCFS later provided further information regarding ICWA.

---

[2] Title 25 United States Code section 1901 et seq.

[3] The court ordered DCFS to investigate father's potential Indian status with the Standing Rock Sioux Tribe. The Tribe responded that J.S. was not eligible for membership. Father has

In a last minute information dated May 12, 2023, DCFS reported that a 2016 report indicated " 'mother stated she was not found eligible for ICWA through Apache [T]ribe in sibling's case.' " (Italics omitted.) A 2015 report indicated that social workers spoke to maternal uncle, who reported " 'none of the family members are [*sic*] affiliated with a tribe.' " He further stated, "[T]he family believes great-great grandfather had some Apache heritage but there is no contact with any relative [who] could verify any Indian affiliation." (Italics omitted.) In 2014, mother signed an affidavit stating she had no knowledge of any tribal affiliation or membership. Also in 2014, the juvenile court found no reason to believe that two of mother's children (J.S.'s half siblings) were Indian children as defined by ICWA.

In the last minute information report dated May 12, 2023, the social worker stated that in December 2022, mother said neither she nor J.S. has Indian ancestry, and that any further inquiry was a " 'waste of time.' " Mother did not return the social worker's call when the social worker attempted to further inquire. Maternal grandmother also did not return the social worker's call when the social worker attempted to ask her about J.S.'s potential Indian status. Maternal uncle denied any affiliation with the Apache Tribe and reiterated that he "just want[ed] to adopt [J.S.]"

On May 12, 2023, the court terminated parental rights. Mother timely appealed.

---

not appealed and mother raises no issue on appeal with respect to patrilineal Indian ancestry.

## DISCUSSION

On appeal, mother's only request is that "this Court remand the matter to the juvenile court with an order that the Department and the juvenile court comply with the duty to notice the Apache [T]ribes." The duty to notify the relevant Indian tribes is triggered if the Department or the court "knows or has reason to know . . . that an Indian child is involved." (§ 224.3, subd. (a); 25 U.S.C. § 1912(a).)

Whether there is reason to know a child is an Indian child "requires the juvenile court to determine, based on the evidence before it, whether any one of six statutory criteria is met—e.g., (1) the court has been advised that the child 'is an Indian child,' (2) the child's or parent's residence is on a reservation, (3) any participant in the proceeding informs the court that it has discovered information indicating the child is an Indian child, (4) the child gives the court reason to know that he or she is an Indian child, (5) the child is or has been a ward of a tribal court, or (6) either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe. (§ 224.2, subd. (d).) If none of these six factors is met, the court must make a finding that there is no reason to know the child is an Indian child." (*In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1004.)

We review a finding that ICWA does not apply for substantial evidence. (*In re Ezequiel G.*, *supra*, 81 Cal.App.5th at p. 1004.) ICWA defines an Indian child as an unmarried person under the age of 18 who "is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4).)

5

Here, mother identifies *no* evidence triggering a "reason to know" under any of the above criteria. Mother's sole contention is that she "informed the juvenile court that the maternal grandfather is an Apache Indian" and therefore, "the court was obligated to order that the Department notice the tribe about [J.S.'s] dependency proceedings."

Mother's statement to the juvenile court that her father may have Apache heritage does not satisfy any of the criteria supporting a statutory reason to know that J.S. is an Indian child. (See *In re A.M.* (2020) 47 Cal.App.5th 303, 321 ["At most, Mother had provided information indicating she may have Indian heritage. Although it would follow that the children might also have some Indian heritage, the information Mother provided to [DCFS] did not rise to the level of 'information indicating that the child[ren] [are] [ ] Indian child[ren].' (See 25 C.F.R. § 23.107(c)(2), (3); Welf. & Inst. Code, § 224.2, subd. (d)(2), (3).)"]; *In re D.F.* (2020) 55 Cal.App.5th 558, 571 ["A suggestion of Indian ancestry is not sufficient under ICWA or related California law to trigger the notice requirement."].)

Neither J.S.'s nor mother's residence was on a reservation. No participant in the proceeding informed the court that J.S. is an Indian child. J.S. himself did not give reason to know that he is an Indian child. J.S. was not a ward of a tribal court. Nor did mother possess identification indicating citizenship in an Indian tribe. Mother relies on the notice described in title 25 of the Code of Federal Regulations part 23.11(a),[4] but as noted above, that

---

[4] The regulation provides in pertinent part: "In any involuntary proceeding in a State court where the court knows or has reason to know that an Indian child is involved, and where the identity and location of the child's parent or Indian custodian

6

regulation's notice requirement is triggered by reason to know an Indian child is involved. Mother failed to provide any evidence below supporting any such reason to know.[5]

## DISPOSITION

The juvenile court's order denying mother's Welfare and Institutions Code section 388 petition is affirmed.[6]

NOT TO BE PUBLISHED.

BENDIX, Acting P. J.

We concur:

CHANEY, J.                                    WEINGART, J.

---

or Tribe is known, the party seeking the foster-care placement of, or termination of parental rights to, an Indian child must directly notify the parents, the Indian custodians, and the child's Tribe by registered or certified mail with return receipt requested, of the pending child-custody proceedings and their right of intervention."  (25 C.F.R. § 23.11(a).)

[5] We observe that mother does not argue DCFS's inquiry was insufficient.  Nor does she acknowledge her unequivocal denial of Indian ancestry postdating her initial claim that maternal grandfather may have Apache heritage, or that maternal grandmother refused to return DCFS's telephone calls, maternal grandfather was deceased, and maternal uncle did not have any contact information for other maternal relatives.

[6] Because we conclude mother demonstrates no error, we need not consider respondent's other arguments either urging dismissal or advocating affirmance of the juvenile court's order.

7